Okay, Mr. Lott, whenever you're ready. I'd like to address two issues today, the first being the failure of the court to allow us to read the depositions of Zow Lee and Zow Agent, the two owners, prior owner, current owner of Best Machinery, into the record. A review of those depositions will clearly show that they focused on piercing the corporate veil. A little back information, the Honda case that's referred to, it started when Honda would write Powertrain clients and say the Powertrain engine is a knockoff of the Honda engine. If you continue to buy it, we're going to sue you. Powertrain files suit against Honda, Honda files countersuit, includes Ma at Best Machinery in a third party complaint, sues Ma personally and individually. She counterclaims and alleges she has been damaged personally by the countersuit of Honda and she also alleges in her counterclaim that she imported the engines into the United States. Now, importing engines into the United States is a key factor in the EPA guidelines and regulations that we contend she didn't get the certificate of conformity. When you bring these engines in from China, they have to have a legal certificate of conformity indicating they have been approved and would pass EPA guidelines. In this particular instance, that's what our suit was about. They didn't have proper EPA certificates on them. They actually had EPA certificates of conformity that Ms. Ma obtained when she first started selling engines to Powertrain. She first used a factory called Everfine and the EPA certificate for the Everfine engine, a four horsepower engine, was proper. But then she changed to a new factory called Tong Young, a factory we contend she owned and had her ownership interest in. She took the Tong Young certificate and stuck it, or excuse me, she took the Everfine certificate and stuck it on the Tong Young engine, not only on a four horsepower, every horsepower you can think of all the way up to 13, she put the same certificate on. So when they came into the United States, they did not have proper certificates. The judge indicated that he would not allow us to use the depositions of Zao Lee, who she lived with in California, who at one time she indicated was her husband. That trial indicated he wasn't her husband. And then Zao Agent, who is Zao Lee's father, who bought this company for $2,000 from his son. Now, what these depositions would have shown was that Bess Machinery was a sham, that everything was Miss Ma. She first dealt with Powertrain. Bess didn't even exist. When she wanted to sell the Everfine engine, Bess wasn't incorporated. Bess later was incorporated by her husband, Zao Lee, who indicated that he was the owner. No certificates or shares issued in it, no records of the business, no minutes. None of the corporate formalities have ever been kept by Bess Machinery. Ma came up with the engines, did all the trips to China to come up with Everfine and then subsequently the Tong Yong engines. It was her job. It was her business.  Mr. Lott, I— Yes, sir. We're talking about the court's determination that there were some depositions that you Yes, sir. And we agree that depositions are hearsay. Yes, sir. All right. But there are certain exceptions which would allow that the deposition could be used. Yes, sir. And so my question is, which exception or exceptions specifically are you contending applied in this case that should have compelled the judge to admit those depositions rather than not allow them? The first one is under Rule 32, Your Honor, that we indicated that it was between the same parties. She was a party in the Honda litigation. I think the issue came about where Judge Davison believed that they needed to be on the opposite side of the V for the deposition to be used. It's our position in the cases we've cited in our brief, that's not required. The real point in using it is that it's concerning the same subject matter. Now, Ms. Ma in her reply brief interchanges that to mean issue. But there's a difference between issue and subject matter. Subject matter of the Honda case were these engines. Subject matter of our case are these engines. And so we contend that it's the same subject matter between parties that were involved in the Honda litigation. You also get over into the issue of whether or not in the prior litigation the party would have had the same incentive to cross-examine or question concerning the same issue. The court will look on both of those depositions. They're not about trade dress. They're not about the engines that Honda sold compared to the engines that Powertrade sold. Those two depositions delve into those two men's ownership of Best Machinery, how they diverted funds out of Best Machinery. One issue there that was paramount was how they showed that Zhao Li, after he sold the business to his father allegedly for $2,000, wrote $1.2 million worth of checks out of that company to his new business, Champion. So those depositions focused on piercing the corporate veil and alter ego issue. So she had every interest to cross-examine in those depositions because she was attempted to be held liable in the Honda case personally, just like we attempted to hold her liable personally in the Powertrain case. Doesn't there have to be a showing of witness unavailability to use depositions such as these? Yes, Your Honor. And quite frankly, that never came up at trial. And I believe the reason it never came up at trial was Ms. Ma testified she lived with Zhao Li in California, 100 miles outside of the jurisdiction. Both depositions indicate Zhao Li said he was a resident of California. Zhao Asian said he was a Chinese resident who lived in California. So the depositions established they were outside of our process, and never was an issue at trial. It only became an issue on this appeal that there was no proof that they were unavailable for trial. But the fact that they're outside of our 100-mile districts clearly establishes that we could not subpoena him to come to court. Why were they not sued along with Ma? You mean Zhao Li and Zhao Asian? Because, Your Honor, we believe that Ma was the principal architect of the whole business. Zhao Li and Zhao Asian both testified in their depositions we didn't have anything to do with this business. Joyce Ma ran the business. She did everything. So we looked to Joyce Ma as the principal party involved as far as Best Machines was concerned. Your Honor, the other part of Rule 32 that I think we've addressed here is the fact that the individual is outside of the subpoena jurisdiction of the court. So I think under Rule 32 we could have used the depositions, one, because of the same subject matter and same parties, and then we could have used the depositions under Rule 32 because they were outside the 100-mile limit. Finally, Your Honor, the issue of piercing the corporate bail. Again, the depositions were, in our opinion, paramount in our ability to establish piercing the corporate bail and alter ego. But that's not our only claim against Ms. Ma. Our other claims were she was negligent herself. She clearly brought in engines that were not properly certified. Now, District Judge ruled that we didn't prove she was an importer. Judge, her complaint stated she imported these engines. Now, she can come back at trial like she did and say, well, I didn't know what my lawyer was putting in the complaints and I didn't have anything to do with that. But the fact of the matter is, presented to that jury, there was proof she imported the engines. There was proof she made all the arrangements in China to ship the engines from China to the United States. So there is a jury issue on whether or not she imported the engines. There was a jury issue on whether or not she was a manufacturer. She changed, as we indicated, she changed the engines from Everfine to Tong Young because she indicated in her emails that were introduced into evidence, Tong Young is my business. She even sent an email to Woods, the principal owner of Powertrain, and said, listen, Everfine people are going to come visit you. Don't tell them about my involvement with Tong Young. That will cause a problem. She moved the business from Everfine, where she wasn't an owner, to Tong Young, where she was an owner and had an ownership interest. How else does a business, they say she's just an employee of best. Well, in 2005, they relied on the W-2 that said she made $28,500 that year as an employee of best. Same year, Judge, in 2005, she signed a personal guarantee for Champion, Zhao Li's new company, for $1 million. Now, how does a woman sign a $1 million guarantee in the same year she said she made $28,500? Because she had an interest in that manufacturing concern, and she made her money from the manufacturing concern out of China. Thank you. Thank you, Mr. Blatt, and you've saved time for rebuttal. Mr. Peoples. Thank you, Your Honor. May it please the Court. I want to address primarily the piercing the corporate veil by way of alter ego doctrine. We believe that's the principal issue in this case. There are several points that I'd like to cover that we believe support the trial judge's decision here. First, I'd like to direct the Court's attention to the Hardy v. Brock case. It's a Mississippi 2002 case. It is a 9-0 decision from the Court, and notably, it was altered by Judge Graves, who's on the panel today. In that case, the Court said that in order for there to be alter ego liability placed on a shareholder, there must be a claim in existence against the corporation. The Brock case is cited in both sides' brief. It was covered in detail as well in Judge Davidson's order denying the motion for a new trial. Judge Davidson cited that language best. Machinery, the entity whose veil the plaintiff wishes to pierce, was not a party at the time of trial. Judge Davidson said sort of as an afterthought in his order denying the motion for a new trial, well, as a matter of law, there can't be a piercing claim anyway because there's not a claim in existence against the corporation. So for that reason, the Court below got it right. Secondly, in Mississippi, the Court has held, Mississippi Supreme Court, in the EDW Investments case has specifically stated in Mississippi, alter ego liability can only be extended to a corporation's shareholders. Gray, which is the seminal case on alter ego liability, as well as all of its progeny, speaks in terms of shareholder, owner, officer liability as opposed to employee liability. The proof adduced at trial was that Joyce Ma, my client, was an employee. Ms. Ma testified to that. Mr. Jeffrey Wood, the principal for Powertrain, the plaintiff, testified to that. At page 2983 of the record, he testified. My understanding is Joyce Ma was an employee. If you look in the Powertrain's motion for a new trial, counsel further indicated Ms. Ma was an employee. So it's replete throughout the pleadings as well as the testimony that Ms. Ma was an employee. Under Mississippi law, as an employee, she can't be held individually liable under this theory. Admittedly. Is there evidence in the record of how the company was owned? Yes, sir. There certainly is. Her boyfriend or husband or whatever, the owner of the shares in the company? Yes, sir. The evidence, Mr. Wood testified as well. He went on to testify. We understood Ms. Ma was an employee. He goes on to testify. And we knew that Mr. Wood refers to him as Ms. Ma's husband. Ms. Ma disputes that. But Zhao Lei and Zhao Asian, who is Zhao Lei's father, are the two owners. That's undisputed. It has never been disputed in the case that Ms. Ma owned the company. Now, as I read Powertrain's brief, Powertrain seems to suggest, well, Ms. Ma did all these things. She found the engines. She was the go-between. She helped us order them. She helped us ship them. That doesn't somehow magically transform her from employee status to ownership status. It's never been established that she's anything other than an employee. Along those lines, the Mississippi Supreme Court has commented that the fact that the principal shareholder basically handles all the day-to-day operations, that alone doesn't justify piercing the corporate veil. That's from the Gray case as well as the Hardy case. Now, admittedly, the plaintiff, Powertrain, has now presented some cases from other jurisdictions, which seem to espouse what I refer to as an equitable ownership doctrine, where a non-shareholder can be held personally liable in a piercing the corporate veil case. But to that, I would say, first of all, these cases have just now been cited. They weren't raised at the lower court level. Secondly, this court, in analyzing a piercing claim under Mississippi law, has to apply Mississippi law. And then finally, again, those cases are not reflective of the status of the law in Mississippi, which is that alter ego liability only extends to corporate shareholders. Perhaps even more importantly, even if, as Judge Davidson noted, we get to the point where either there is some proof that Ms. Ma was an owner, or alternatively, this court were to find that Mississippi would apply the equitable ownership doctrine such that Ms. Ma, as an employee, could be held individually liable, the plaintiff can't meet its burden of proof on the three factors set out in Gray. And principally, I would point the court to the first factor, which is the frustration of contractual expectations prong. Of course, Powertrain claims, when we looked at Joyce Ma, she did everything. When we had a question, we would call Ms. Ma. She was the person who found the engine. She did everything. But the evidence belies that claim. And in particular, I would direct the court's attention to the pretrial order, wherein the parties agreed by stipulation that Best was the entity who assisted Powertrain in the purchase of engines. By sometime in early 2003, Best had ceased its relationship with Everfine. Then Best began to arrange for Powertrain to purchase engines. So it's Best to whom, as a matter of law, Powertrain is actually looking. The contracts in this case are purchase orders that were sent and directed to Best. There's not a single purchase order, according to Mr. Wood, that was directed to Ms. Ma. There's no contract with Ms. Ma. All the payments from Powertrain were made to Best. There are no payments to Ms. Ma. Notably, Powertrain, which is an incorporated entity, paid by corporate check. They didn't pay by personal check. Mr. Wood testified that as a businessman, he understands the value of having an incorporated entity, the purposes and the reasons that you do that. Were there any accusations or evidence that Ms. Ma's husband-slash-boyfriend was a straw man for her in holding these shares and that they were really hers? That has not been raised, Your Honor. I think the closest that Powertrain came to making that kind of argument at trial was to suggest, well, they're married, and so, therefore, they're one and the same. But that particular argument, Mr. Wood, that has not been raised. With respect to the frustration of contractual expectations, I'm going to point the Court to two particular cases. The Restaurant of Hattiesburg case where the Court said frustration with the performance of the LLC is not the type of frustration warranting disregard of the LLC's separate identity. And that's essentially what we have here. They're not satisfied that they didn't get the certificates of conformity. They're not satisfied with the performance, but the entity to whom they looked was best based upon the contracts. Richardson v. Jenkins Builders, the plaintiff had a contract with Jenkins Builders Incorporated to build a duplex. The contract was signed by the corporation, not the individual. The plaintiff paid the corporation. The Court went on to hold, and this is the Court of Appeals from 1999, there is no arguable basis to conclude that the plaintiff either actually believed or was justified in believing that the corporation's owner was personally guaranteeing the contract's performance. And that's exactly what we have here. The contract was with best. Payments were made to best. Powertrain is an incorporated entity. They're a sophisticated entity. They've made a bunch of money selling engines that were imported from China. They understand that they were dealing with a corporation, notwithstanding that there is an individual who is essentially the face of the corporation. Obviously, a corporation is a fictional item. It can't physically do things. It has to have an employee or some individual who does that. I want to make one point of correction. Mr. Lott had mentioned, in addition to his rebuttal brief, he mentioned it in his opening commentary, that best was formed after this relationship began between Joyce Ma and Powertrain. That's simply not the case. The first engines that were imported by Powertrain were manufactured by Everfine. And in the pretrial order, the first stipulated fact is between sometime in 2002 and early 2003, best assisted Powertrain and Powertrain's purchase of engines and related equipment manufactured in China by Everfine. Best existed prior to any engines being imported. That's in the pretrial order. Mr. Wood acknowledged in his testimony every single purchase order was issued to best. There's not a single one to Miss Ma. All payments were made to best. There's not a single payment to Ma. And there's no proof to suggest that best was formed as a sham to sort of trick or deceive Powertrain. Thank you. Lastly, and I'll just touch very briefly on the other two factors in gray, the flagrant disregard of the corporate formalities as well as fraud. Really the only proof that has been put on by Powertrain at trial that was admitted into evidence at trial was essentially the testimony that Miss Ma transferred a bunch of money from best to this new entity, Champion. Mr. Wood, however, admitted Lazell, the owner, is the individual who actually signed the checks. There's no proof that Miss Ma had anything to do with that, that she had any control over those funds. And so we believe that the proof is lacking in that regard with respect to this contention that, well, we have these other claims that Judge Davidson just sort of brushed to the side and dismissed, the negligence claim, negligence per se, breach claims. It's certainly our contention that those are all derivative of this piercing the corporate veil theory. You have to pierce the corporate veil in order to find that Miss Ma, acting as an employee of a corporation, is negligent. Otherwise, there would be no reason to engage in the piercing the corporate veil discussion. Your contention that these depositions that were not allowed in would not have changed the relationship in Best and Miss Ma and made her somehow the owner rather than just an employee. Yes, sir. No, sir. It's our contention, certainly, that, number one, getting back to the general rule of thumb, which we covered with the piercing discussion earlier, it wouldn't matter if they had come in anyway. We believe the law was favorable to Miss Ma. The testimony that Powertrain wanted to admit into evidence by way of these depositions was essentially Powertrain was undercapitalized. They didn't keep books. They didn't keep minutes. They didn't have records. They just sort of let Miss Ma run everything. But, again, running everything is not the equivalent of being the owner or shareholder. Neither one of the deponents ever said anything other than Miss Ma was our employee. They never said she was an owner. They never said she was a shareholder. There are no exhibits to those depositions which would establish any of those facts. Again, the only proof both admitted at trial and contained in these depositions is that she's an employee. Yes, she's heavily involved in the business. Your efforts to keep them out was that they could have confused the jury? Well, to be frank with Your Honor, Miss Ma retained me personally a matter of weeks prior to trial. There was a pending motion in limine filed by prior counsel on that point. The motion existed before we could even argue it. Judge Davidson ruled on it in chambers. Certainly, our position would be they would be used to prejudice the jury. These are acts as far as undercapitalization, the lack of minutes, things of that nature that corporate owners, corporate shareholders did. Miss Ma is not a corporate owner or shareholder, and so certainly, at best, the deposition testimony would be used to just sort of clutter things and make it look bad for her. So we believe, and we'd also stand on our briefs, we don't believe the depositions should have come in for various reasons. We believe Judge Davidson was correct in that regard. Very briefly, the plaintiff has cited Rule 32A.3. That rule speaks to depositions of parties. Best was not a party. Mr. Zao and Mr. Asian were not parties. Rule 32A.4 speaks to unavailability. If a witness is unavailable, the deposition can come in. It's our contention that plaintiffs simply said, well, they're not here. We don't know where they are. We think they're in California. That's not sufficient, we believe, under the cases Joltz v. Corley, 830 Fifth Circuit 2nd. It's a 1987 case. Simply claiming you don't know where a witness is is insufficient. 32A.8, same subject matter, same parties. Plaintiff's contention is, well, we're talking about the same engines, so therefore we're talking about the same subject matter. That's not the case. That's not what the cases hold. Completely different cases. The original case, the Honda case, involved trademark infringement issues. This case involves EPA violations and indemnity claims. Same parties in the Honda litigation. Best, Ms. Ma, and Powertrain were all third-party defendants, counter-defendants. Honda had sued them for trademark infringement. Ms. Ma and Best and Powertrain were working together in the defense of those claims. They did not have the same motives or opportunity for cross-examination. They were working together. So we believe that under all those rules, Judge Davidson was correct. We would ask this court to affirm the lower court's opinion. If there are no other questions, I'll sit down and rely on my brief. Thank you, Mr. Speaker. Thank you, Your Honor. Thank you, Your Honor. First of all, Mr. Peoples is correct that the first engines were brought in. The point we were making was she approached Powertrain to get the Everfine engines EPA certified before Best Machine was ever incorporated. That happened in 2001 at a trade show in Las Vegas. So this whole thing started long before Best was incorporated. She approached them to get the certificate of conformity in. Your Honor, the Gray case that Counsel Opposite is referred to also notes that an individual who is not a shareholder could be individually liable if fraud or other equivalent conduct was committed. Now, our expert in the case, the only expert in the case, said it was fraudulent to import an engine into the United States without a proper certificate of conformity on it. So that is a jury issue for the jury to determine whether Miss Ma fraudulently brought these engines into the United States without a proper certificate of conformity on them. That testimony was undisputed. There was no testimony to refute what the expert said about the certificate of conformity. Now, the issue was that Best Machine was no longer a party. Best Machine was no longer a party because we got a default judgment on them because they failed to appear. They were a party in the original complaint up until the point that we got the default judgment against them. Interestingly, we got two default judgments against them because we filed an amended complaint. And the court will note, we couldn't find Xia Li. We attempted to serve him five times, finally had to get an affidavit from the process server in California that he was avoiding process to get Judge Davison to enter a second default judgment against Best Machine on the amended complaint. So here's a man that we're supposed to subpoena the court in Mississippi, and we can't even get him served in California at his home or according to the notes of the process server. Couldn't even serve him at his new place of business, Champion Machine. So what we have here, Judge, is Ms. Ma, they allege she's an employee. She's an employee. Well, what do employees have? They have officers who tell them what to do. They have directors who tell the officers what to do. They have shareholders that tell directors what to do. It follows down the line. There's nobody above Ms. Ma telling her what to do, how to run that business, anything of that nature. She's running the whole show. And because they don't issue stock certificates, because they don't keep minutes, because they don't have directors, because they don't have officers, that's to be used against us that we can't prove she was anything more than an employee. Well, the whole corporation didn't have anybody. She was it. She was the only person carrying out the business of Best Machine. She went to China and got the engines. She shipped them in. She dealt with the testimony was Powertrain was her only client. They were the only people she dealt with, Powertrain. She didn't have other clients that she was bringing engines in for. And in this particular instance, at the later point, when these engines became apparent, these engines didn't have proper certificate titles. She was also working for Champion. Now, Champion, at this particular point or at the point where it went into business and Best goes out, well, Champion's doing the same thing Powertrain did. Champion's bringing engines in. In fact, they're bringing engines in from Tong Young, the same manufacturer. But all the Champion engines are good. All the Powertrain engines are not. Guess who's out of business now? Powertrain. Champion's still blowing and going. We got the bad engines. They weren't properly certified. They stuck certification stickers on these engines. And when I say they, Ms. Mott. She controlled the manufacturing process. She indicated to Powertrain, this company is my company. Your Honor, for the reasons we've indicated, we feel the court was improper and we ask that we be given an opportunity to try this case again. Thank you, Mr. Flott. Your case and all of today's cases.